**Michael V. COSTELLO, Roberto K. Celestineo, and all others similarly situated, Plaintiffs-Appellees,**

**v.**

**Louie L. WAINWRIGHT, as Director of the Division of Corrections, State of Florida, et al., Defendants-Appellants,**

**United States of America, Amicus Curiae.**

**No. 75–2392.**

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1976.

**548**

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Raymond W. Gearey, Tallahassee, Fla., Atty. for Fla. Div. of Corrections, John A. Barley, Asst. Atty. Gen., Dept. of Legal

Affairs, Civil Div., William C. Sherrill, Jr., Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellants.

Tobias Simon, Miami, Fla. (Court-appointed), Jack Greenberg, New York City, for plaintiffs-appellees.

Brian K. Landsberg, William C. Graves, U.S. Dept. of Justice, Washington, D.C., for amicus curiae.

Before BROWN, Chief Judge, TUTTLE, GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE, TJOFLAT and HILL, Circuit Judges.*

RONEY, Circuit Judge:

This is a class action on behalf of inmates of the Florida prison system alleging constitutional violations because of inadequate medical care. Defendants[1] appeal an Order and Preliminary Injunction entered on May 22, 1975, requiring them to lower the inmate population to "emergency capacity"[2] within one year of the date of

---

* Because of illness WISDOM, Circuit Judge, did not participate in the hearing or in the consideration of this case.

THORNBERRY, Circuit Judge, was a member of the En Banc court that heard oral arguments but due to illness did not join in this opinion.

1. The defendants in this lawsuit are Louie L. Wainwright, Director of the Division of Corrections, and Stuart N. Cahoon, Director of the Division of Mental Health. Defendants were sued in their official capacities. The Division of Corrections is responsible for inmates committed to it following criminal convictions. The Division of Mental Health is responsible for inmates who have been charged with or convicted of a crime and who are believed to have some type of mental disorder or defect. These inmates are committed or transferred to the Division of Mental Health for treatment or examination. The Division of Mental Health was brought into this suit by the district court's Order of April 24, 1973, adding Cahoon's predecessor, W. D. Rodgers, then Director of the Division of Mental Health, as a party defendant. Until Florida's Correctional Organization Act of 1975, both Divisions were part of the Department of Health and Rehabilitative Serv-

ices. Since July 1, 1975 the Division of Corrections is now a separate department known as the Department of Offender Rehabilitation.

When the very first complaint was filed in the district court on February 9, 1972, defendants included Lawrence E. Dugger and J. F. Tompkins, Superintendent and Assistant Superintendent, respectively, of prisons operating within the Division of Corrections. Dugger and Tompkins were voluntarily dismissed from the lawsuit on March 20, 1973. A motion by the plaintiffs on February 26, 1973 to add as parties defendant members of the Florida Parole and Probation Commission was denied by the district court on April 24, 1973.

2. "By the defendant's own definition, which was adopted from the American Justice Institute's Report on Overcrowding in the Florida Prison System '[emergency capacity] represents the population beyond which the institution must be considered critically, and quite probably, dangerously overcrowded. It includes every bed in the institution which it is judged can safely be occupied at times of peak populations either due to intermittent and unpredictable population surges or to emergency and temporary circumstances within the insti-

the Order and to "normal capacity"[3] by December 1, 1976. The effect of that Order was stayed pending appeal.[4] A panel of this Court affirmed the Preliminary Injunction with some modification of the dates for compliance.[5] Defendant's petition for rehearing en banc was granted, principally for the purpose of considering whether the district court's Order was appropriate as a single-judge injunction without the convention of a three-judge court.[6]

After benefit of oral argument and additional briefing, the en banc court now decides that the Order entered by the district court requires a result that the only two defendants in this lawsuit[7] cannot possibly achieve through their own actions and still comply with the Florida law which limits their authority. The Court therefore vacates the Order and remands the case to the district court to decide precisely what the defendants in this suit can legally do to alleviate the constitutional violations found to exist in the Florida prison system, and

then to fashion an Order with which these defendants can comply without violating any Florida laws. If a court order is to be entered which requires action of these defendants which will violate Florida laws on the ground that compliance with the law would be unconstitutional, then a three-judge court should be convened.

The en banc court adopts the panel opinion as to all issues raised on the appeal except in regard to the necessity of a three-judge court for the injunctive remedy entered by the trial court. The Court therefore affirms the district court's refusal to abstain, and the district court's findings of constitutional deprivations in the Florida prison system to the extent that they would support the granting of appropriate single-judge relief. We expressly do not consider the sufficiency of the evidence to support the Order appealed because that Order could only be entered by a three-judge court, which would have to first consider the evidence and make its own findings of fact and conclusions of law[8] reviewable not

tution or elsewhere in the division.'" *Costello v. Wainwright*, 525 F.2d 1239, 1247 n. 4.

**3.** The American Justice Institute defines as "[normal capacity] that population which an institution can properly accommodate on an average daily basis. It represents that population which best utilizes the resources currently available. It should include some vacant beds; to accommodate population surges, and to allow for different classifications of inmates within institutional totals. It does not necessarily represent the fullest possible use of the plant, given virtually unlimited program and staff resources. Such a figure might be termed maximal capacity." *Costello v. Wainwright*, 397 F.Supp. 20, 34 n. 10 (M.D.Fla.1975).

**4.** The district court entered its preliminary injunction on May 22, 1975. *Costello v. Wainwright*, 397 F.Supp. 20 (M.D.Fla.1975). On June 10, 1975, a panel of this Court granted appellants a temporary stay of the district court's Order. That panel directed that the district court conduct further hearings to develop a record "on the questions of the minimum time tables for accomplishing all parts of the order, assuming this court affirms that order on the merits." That order indicated the Court's concern that "Florida's representations of impossibility are serious enough to warrant further fact-finding." Further hearings were conducted by the district court and on June 27, 1975, it entered and certified to this Court addi-

tional findings of fact and conclusions of law that essentially reaffirmed the Order of May 22. On July 25, 1975, a panel of this Court granted appellants' motion to stay the district court's Order pending the disposition of this appeal. *See Costello v. Wainwright, supra*, 525 F.2d at 1241–1242, 1248–1249. The panel which first heard this appeal on the merits vacated the stay. The mandate has never been issued since rehearing was granted. F.R.A.P. 41. The stay entered July 25, 1975, therefore remains in effect pending disposition of the appeal by the en banc court.

**5.** *Costello v. Wainwright, supra*, 525 F.2d 1239 (5th Cir. 1976). The reduction periods of 90 to 365 days referred to in the district court's Order would begin to run from the date of the panel's remand of the judgment to the trial court. The December 1, 1976 date established by the district court for the attainment of normal capacity in the prison system was modified to July 1, 1977. *Id.* at 1252.

**6.** *See Costello v. Wainwright*, 528 F.2d 1381 (5th Cir. 1976).

**7.** *See note 1 supra.*

**8.** The convention of a three-judge court would not mean that the case would have to start all over again. The record amassed in the single-judge proceeding could of course be used in

by us, but by the United States Supreme Court.[9] Nor do we consider what single-judge relief would be appropriate to remedy the constitutional deprivations found to exist in the Florida prison system which can be remedied by the lawful action of the defendants, a matter for initial consideration by the district court.

This case did not start out as a three-judge case. As initially instituted and throughout a considerable amount of litigation in the trial court the suit sought the delivery of adequate medical care for the inmates of the Florida prison system. Defendant Wainwright and the then defendant W. D. Rodgers, Director of the Division of Mental Health, were responsible for the medical care of the prisoner plaintiffs. Although the medical care was found to be so inadequate as to rise to an Eighth Amendment violation, no Florida law came under constitutional attack. At some point, however, the suit began to focus on prison overcrowding. The district court decided that adequate health care could simply not be afforded to the prisoners because of the crowded conditions of the prison. When the action turned into a prison overcrowd-

ing case, the relief stretched beyond the legal limits of the defendants' authority.[10] The Mental Health Director has no power to control prison population. Defendant Wainwright had the power to control prison population by refusing to accept prisoners or letting them go, but he could do neither of these things without violating the Florida law which circumscribed his legal authority. The Director of the Division of Corrections in Florida is required, with the compelling force of criminal sanction, to accept all prisoners lawfully committed to his care. See Fla.Stat. §§ 839.21, 944.16, 945.09.[11] He can discharge prisoners only in compliance with statutory restrictions. See Fla.Stat. § 944.29. Although the Director has the ability to provide some additional prisoner capacity, that ability is limited and was in no way shown to be sufficient to comply with the demands of the court's Order. The argument that discretionary discharges and facility control within the Director's legal power are sufficient to permit compliance with the Order without Florida law violation must fail because the district court's Order is written in absolute terms without limiting reference to the legal power of these defendants.[12]

---

any three-judge court's consideration of this case. Cf. *Morales v. Turman*, 535 F.2d 864 (5th Cir. 1976).

9. 28 U.S.C.A. § 1253 provides:

Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

10. Motion by the defendants on May 12, 1975 requested the convening of a three-judge court. The motion was submitted in open court and taken under advisement by the district judge that same day. The district court denied the motion in its Order of May 22, 1975.

11. Fla.Stat. § 839.21 provides:

Any jailer or other officer, who willfully refuses to receive into the jail or into his custody a prisoner lawfully directed to be committed thereto on a criminal charge or conviction, or any lawful process whatever, shall be guilty of a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083.

12. The district court Order provided:

That, within one year of the date of this order and preliminary injunction, the defendants are hereby required to reduce the overall inmate population of the Florida Division of Corrections (or its successor agency, if any) to "emergency capacity" (as that term is defined by the 1972 Technical Assistance Report prepared for the Florida Division of Corrections by the American Justice Institute entitled "Overcrowding in the Florida Prison System") in the following stages:

(a) Within *90 days* of the date of this order and preliminary injunction, the inmate population of the Florida Division of Corrections shall be reduced to *2,000 inmates* above "emergency capacity".

(b) Within *150 days* of the date of this order and preliminary injunction, the inmate population shall be reduced to *1,500 inmates* above "emergency capacity".

(c) Within *210 days* of the date of this order and preliminary injunction, the inmate population shall be reduced to *1,000 inmates* above "emergency capacity".

(d) Within *270 days* of the date of this order and preliminary injunction, the inmate population shall be reduced to *500 inmates* above "emergency capacity".

■ In an effort to support the court's Order, the argument is made that "if in spite of best efforts Mr. Wainwright proves to be unable to comply with the Order consistently with his statutory authority, such 'impossibility' may be a valid defense under the circumstances of this case." This result-oriented argument misconceives the carefulness with which courts should grant the extraordinary remedy of mandatory injunctive relief,[13] and misapprehends the "impossibility of performance" defense to court ordered injunctive relief.[14] Likewise, the Order cannot be supported on the surmise that other state agencies or officials will rescue Wainwright from the dilemma of either violating the court Order and defending against contempt on the ground that compliance would require violation of Florida laws, or violating Florida law and being left to the defense that compliance would require violation of a Federal court order.[15] The record in this case tends to demonstrate that defendant Wainwright, a well-respected prison official, has done perhaps all that he can do within his legal power to alleviate the overcrowding situation,[16] even if the State of Florida has not done all that it can.

■ By accepting lawfully committed prisoners, Wainwright would only be subjecting them to an environment of constitutional deprivation. To refuse to accept fur-

---

(e) Within *365 days* of the date of this order and preliminary injunction, the inmate population shall be reduced to *"emergency capacity"*.

\* \* \* \* \* \*

ORDERED AND ADJUDGED:
That, by December 1, 1976, the defendants shall reduce the overall inmate population of the Florida Division of Corrections to "normal capacity", that is, that population which the institutions of the Florida Division of Corrections can properly accommodate on an average daily basis.

13. *Fox v. City of West Palm Beach*, 383 F.2d 189, 194 (5th Cir. 1967); 42 Am.Jur.2d *Injunctions* § 20 (1969).

14. 42 Am.Jur.2d *Injunctions* § 37 (1969).

15. The State of Florida is not a defendant. The Parole and Probation Commission is not a defendant. The Governor is not a defendant. Nor are any other agencies of the State of Florida parties to this suit, agencies which the plaintiffs argue are in a position to ameliorate the overcrowding situation which is the sole basis for the preliminary injunction appealed from. Although the way may be wide open for the State of Florida to meet the requirements of the injunctive order, as is argued, the State of Florida has not been enjoined.

As noted in the dissent from the original panel of this Court's majority opinion, this is simply a different situation than in *Newman v. Alabama*, 503 F.2d 1320 (5th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975). There the action was brought against the State of Alabama and various individuals including the State Attorney General, the Warden at Mt. Meigs, the Alabama Board of Corrections, its Commissioner, Chairman and four members of the Board, as well as the hospital administrator and staff of the Medical and Diagnostic Center at Mt. Meigs. The at-tack went to the deprivation of adequate medical care and the named defendants were precisely the people who could alleviate the problem. Likewise *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974), involved a different situation than in this case. In *Gates* the suit was against the Superintendent of the Mississippi Penitentiary, the members of the Mississippi Penitentiary Board and the Governor of the State, all parties who might properly effectuate the ordered relief. *See Costello v. Wainwright, supra*, 525 F.2d at 1253–1254 (Roney, J., dissenting).

16. In fact, between the period of February 9, 1972 and December 20, 1974, defendant Wainwright on two occasions refused to accept any additional inmates committed to the Florida prison system. This action was taken by Wainwright in an effort to help alleviate the crowded conditions existing at that time in the state prisons. On February 8, 1973 the plaintiffs filed an application for a preliminary injunction in an effort to prevent defendants from accepting any more prisoners committed to their custody. The district court denied the application without prejudice on February 13, 1973 on the basis that Wainwright himself had refused to accept additional inmates and therefore the issue was moot. Wainwright lifted his ban on further entrants, however. Then again in late 1974, Wainwright for the third time closed the prison system to additional admittees. Thereafter this action was rescinded upon strict orders issued Wainwright from the Governor of the State of Florida. As a consequence of Wainwright's efforts to relieve the problems in the Florida prison system, a number of the state's law enforcement officials on December 20, 1974 filed a mandamus action in Leon County Circuit Court seeking to compel Wainwright not to refuse the admittance of any prisoner lawfully committed to his custody.

ther prisoners would contravene statutory law. Under these circumstances the district court Order condemns the operation of Wainwright's statutory responsibility. Here arises the three-judge court problem. If the Order is to remain as written, it is beyond the jurisdiction of a single judge. A three-judge court would be required. A statute does not have to be directly challenged as unconstitutional on its face where the impact of a court order achieves the precise result requiring a three-judge court. *See Query v. United States,* 316 U.S. 486, 489, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942); C. Wright, *Law of Federal Courts* § 50, at 190 (2d ed. 1970). This Court recognized this in *Newman v. Alabama,* 503 F.2d 1320 (5th Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975):

> Thus, the import of our disposition of the claims presented by Baker is that the complaint's failure to explicitly challenge the constitutionality of a specific regulation will not vitiate the need to convene a three judge court, where the relief sought, if granted, would inexorably condemn those promulgated rules and regulations not specifically challenged. Adoption of the contrary view would have been tantamount to sanctioning the resort to semantical and legal artifices, a practice which should be steadfastly abjured.

*Id.* at 1326–1327 commenting on *Baker v. Estelle,* 491 F.2d 417 (5th Cir. 1973). The statewide effect required for three-judge court jurisdiction is present because the district court's Order affects the entire Florida prison system. *See, e. g., Phillips v. United States,* 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941); *Sands v. Wainwright,* 491 F.2d 417, 421–422 (5th Cir. 1973), *cert. denied sub nom., Guajardo v. Estelle,* 416 U.S. 992, 94 S.Ct. 2403, 40 L.Ed.2d 771 (1974).

*See also* the recent decision in *Morales v. Turman,* 535 F.2d 864 (5th Cir. 1976).

The result reached under the district court's Order as it is now framed creates the kind of event § 2281,[17] the three-judge court statute, was designed to protect against. "[T]he central concern of Congress in 1910 [when enacting the three-judge court statute] was to prevent one federal judge from granting an interlocutory injunction against state legislation on grounds of federal unconstitutionality." *Florida Line and Avocado Growers, Inc. v. Jacobsen,* 362 U.S. 73, 80, 80 S.Ct. 568, 573, 4 L.Ed.2d 568 (1960). *See generally* D. Currie, *The Three-Judge District Court in Constitutional Litigation,* 32 U.Chi.L.Rev. 1, 3–12 (1964). The Order in this case presents that type of situation for its impact goes to defendants' inability to maintain the Florida prison system constitutionally under the legislation within which they must operate.

Defendants cannot be required to suffer the consequences of an Order with which they have no legal capacity to comply, absent an injunction by a three-judge court against the operation of the offending statutes. The case is remanded to permit the district court to grant only such relief against these defendants as they can provide without nullification of state statutes, and to request the convention of a three-judge court if that is deemed appropriate under the circumstances.

VACATED AND REMANDED.

TUTTLE, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, and GOLDBERG, Circuit Judge, join, dissenting.

With deference I dissent. I cannot agree to what I consider to be a tragically wrong disposition of the claim of nearly 15,000 Florida state prisoners to be afforded sim-

---

17. 28 U.S.C.A. § 2281 provides:

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

ple, humane treatment. After four and a half years of litigation, one year of which has been consumed in this Court, the Court now concludes that all was a nullity because the order entered by the trial court required a reduction of overcrowded prison facilities to meet constitutional standards on a schedule that *might* at some future date require the defendant Wainwright to violate state statutes or disobey the court's order. So fruitless and wasteful a result as this comes in spite of the fact that as fully demonstrated in the court's original opinion, *Costello v. Wainwright*, 525 F.2d 1239, every essential fact on which the trial court based its order was conceded by the appellant.

As pointed out in the earlier opinion, there was nothing in the trial record that would support the thesis that the trial court's order "would inexorably condemn" any Florida statute, the standard established in our case of *Newman v. State of Alabama*, (5th Cir. 1974) 503 F.2d 1320, to enable the court to determine whether a three-judge court is required.

Even were this not the case, the appellant, in a document entitled "Supplement to Record" filed at the time of the oral argument before the *en banc* Court, demonstrates that the likelihood of Wainwright's ability to carry out the Court's order without violating any state laws is greatly enhanced. This document, which, regardless of whatever other significance it may have, is at least binding on the appellant, recites that:

> "Facilities presently available to appellants are staffed and otherwise accommodated for housing up to 17,091 persons. Currently there are 16,267 inmates housed in said facilities. Although the figure of 17,091 is indicated as maximum [emergency] capacity, appellants are *able to expand the capacity of presently available facilities if necessary* by adding temporary staff and other necessary physical plant facilities on a relatively short notice." (Emphasis added.)

The trial court's order requiring that inmate population be reduced in certain specified stages would not have required a reduction at the time of the filing of that document below the figure which it demonstrated Wainwright already had at his disposal.

The court's opinion, no matter how phrased, seems to me to be based on the proposition that unless it is absolutely clear at the time the court's order was issued that under no circumstances could it be complied with within the statutory limitations solely by action of the defendants themselves, the case called for a three-judge court. This is not the test. The test, as stated above, is that announced in *Newman*. An order of a trial court enjoining state action in a suit in which no state statute or rule or regulation is attacked as being unconstitutional would nevertheless require convening of a three-judge court "where the relief sought, if granted, would *inexorably* condemn those promulgated rules and regulations not specifically challenged. . . ." (Emphasis added.) 503 F.2d at 1326.

Of course, the Court, sitting *en banc*, can overrule *Newman*, but to do so it would have to reject the further view expressed in *Newman:*

> ". . . to countenance the application of *Sands [Sands v. Wainright]* to the instant case would work an unprecedented expansion of the jurisdiction of three-judge courts and would erode the customarily constrictive view of three-judge court jurisdiction which the Supreme Court had mandated. [Citations omitted.]"

Moreover, for any court to expand the jurisdiction of three-judge courts at this particular moment, especially in the situation where clear and manifest injustice is being done to parties seeking vindication of constitutional rights seems to me to be singularly inappropriate. Congress passed and the President signed on August 12, 1976, Public Law 94–381 which abolishes requirement of three-judge courts in situations now covered by §§ 2281 and 2282 of Title 28 U.S.C. To be sure, there is a savings clause in the Act so that it is not applicable to

pending suits. However, with such a clear indication of Congressional purpose to abolish three-judge courts in this type of litigation completely, I cannot but dissent from a judgment by this Court which expands the range of cases which must still consume the time of three judges.

I, therefore, would reaffirm the judgment and decision of the panel of this Court affirming the judgment of the trial court. I, of course, concur in those parts of the opinion which deals with the non-operative part of the trial court's order.