Tyrone GREEN, John Edney et al., Plaintiffs,

v.

William T. (Billy) FERRELL et al., Defendants.

Moses BELTON, Plaintiff,

v.

William T. (Billy) FERRELL et al., Defendants.

Civ. A. Nos. W79–0009(N), W79–0099(N).

United States District Court, S. D. Mississippi, W. D.

Nov. 13, 1980.

afford him needed medical services while incarcerated. Jurisdiction is alleged, in both cases, under 28 U.S.C. §§ 1343, 2201 and 2202. Both plaintiffs and defendants in each case filed motions for summary judgment which were denied following oral arguments. The cases are not before the Court on evidence received pursuant to paragraphs 3–5 of this Court's Order of March 31, 1980:

[A]s mandated by *Bell v. Wolfish,* 441 U.S. 520 [99 S.Ct. 1861, 60 L.Ed.2d 447] (1979), and *Smith v. Sullivan,* 611 F.2d 1039 (5th Cir. 1980), this Court intends to hold a hearing "to be set in the near future" to evaluate the totality of conditions at the Adams County Jail. After such hearing, this Court will continue to exercise its jurisdiction only if substantial evidence has been submitted demonstrating a violation of the Plaintiffs' constitutional rights.

The Court hereby gives counsel for both sides adequate opportunity to submit any other evidence, supplemental affidavits or memorandum briefs in regard to the condition of the Adams County Jail, provided that such materials be submitted *no later than thirty (30) days from the date of this Order.* All of the above submitted materials will be evaluated by the Court along with any additional oral testimony or arguments requested by counsel to be presented on the date of the hearing.

The above styled cases [*Green* and *Belton*] will be consolidated for purposes of the hearing discussed above.

A non–jury evidentiary hearing in accordance with the terms of the March 31 Order was held on July 30 and August 1, 1980. Plaintiffs offered the testimony of two incarcerated inmates, Walter J. Kelly and Clarence L. Pilcher, a former inmate, Moses Belton, and Mrs. Ella Tardy, Jail Project Coordinator for the Mississippi State Medical Association. Additionally, plaintiffs re–introduced a variety of documentary evidence already in the record from prior motions and other proceedings along with several affidavits. Defendants

Shirley E. Payne, Dennis L. Horn, Central MS Legal Services, Hazlehurst, Miss., for plaintiffs.

Lucien C. Gwin, Jr., Handy, Fitzpatrick, Gwin, Blough & Lewis, Natchez, Miss., W. V. Westbrook, III, Sp. Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

WALTER L. NIXON, Jr., District Judge.

These are two related but unconsolidated civil rights actions concerning conditions of confinement in the Adams County, Mississippi Jail (hereinafter referred to as the jail). *Green v. Ferrell* is a class action by convicted inmates seeking declaratory and injunctive relief concerning a variety of jail conditions and practices. *Belton v. Ferrell* is an individual action by Moses Belton, a former prisoner, seeking declaratory and injunctive relief and monetary damages for specifically alleged violations of his due process rights and defendants' failure to

offered expert testimony by Paul Rankin, Director of the Division of Food Service and Sanitation, Mississippi State Department of Health; John Chamblee, Chief Deputy State Fire Marshal; Elise Aiden, licensed dietitian, and by deposition the defendants offered the testimony of Dr. David M. Ball, M.D., the jail's contract physician. Adams County Sheriff William T. Ferrell also testified concerning general jail conditions and administrative practices. Defendants also offered selected affidavits, photographs and other documentary evidence previously filed in connection with earlier pleadings. In accordance with instructions from the Court, both sides filed written objections to the additional documentary evidence offered by the plaintiffs as well as objections to the deposition of Dr. Ball taken subsequent to the hearing, which the Court has accordingly ruled on; therefore, this matter is ripe for decision.

This memorandum opinion, pursuant to Rule 52(a), Federal Rules of Civil Procedure, represents the Court's Findings of Fact and Conclusions of Law, based on the evidence thus adduced.

## FINDINGS OF FACT

### Green v. Ferrell

#### Physical Plant

The new Adams County Jail was conceived, planned, financed, constructed and occupied over eleven months before either the Green or Belton complaint was filed. The jail, which opened on March 1, 1978, is a two million dollar modern, five–story masonry structure located in downtown Natchez. It is designed to hold 72 persons, 62 of whom are housed individually in private, virtually identical 63 square foot cells equipped with a bunk, light, stainless steel water, toilet and lavatory unit. Most cells have a window with a built in fresh air register which affords cell occupants access to sunlight and fresh air when weather permits. The entire facility is centrally heated and air conditioned to a year–round temperature of approximately 72°.

The Adams County Jail has never at any one time housed more than its 72 person capacity, and at no time except in the trusty bunk room has more than one prisoner been housed in a cell. The trusty bunk room is more of a dormitory room. The retention facilities of the Adams County Jail are contained on the second and third floors of the jail. Pretrial detainees and convicted misdemeanants are all housed on the second floor, separating juvenile inmates as well as male and female inmates. Convicted felons (who comprise the class), are housed on the third floor, which again separates male from female inmates.

Both the second and third floors are divided into three groups of cells. The group of cells or cellblocks range in size from 6 to 12 cells in which all of the cells open into a central room called a dayroom. The dayrooms range in size from 432 square feet to 702 square feet with affixed benches on each side, a stainless steel laundry sink and showers.

The jail is equipped with a T.V. monitoring system and a public address system which monitors visually and aurally the entire jail facility. The public address system is available for instruction to all segments of the jail, particularly those segments in which prisoners are housed, and is specifically provided for jailer audio monitoring of the entire jail facility and for the broadcast of routine and emergency instructions to all inmates. The system is available for use in the evacuation of inmates in the event of fire and for the giving of instructions by the jailer for such evacuations. It is alternatively powered by an emergency electrical supply.

The jail structure is of masonry and reinforced concrete construction and exceeds all applicable requirements for a fully fireproof rating under the Southern Standard Building Code Congress and meets all recommendations of the National Fire Protection Association.

#### Food

The menu prepared for the jail on a weekly basis provides each member of this

class a daily diet affording each inmate slightly over 2,000 calories per day. Food is furnished to the inmates twice daily, prepared on the premises in an excellent institution–type kitchen and served from a food warmer. The meals are served hot and in the opinion of this Court are nutritionally adequate. Additionally, prisoners are permitted to purchase additional food and convenience items for personal consumption and may also receive these items on a daily basis from friends or family members. The only factual evidence presented by plaintiffs are isolated inmate complaints that food is sometimes served cold and that the food in a couple of instances allegedly contained weevils. These allegations were directly controverted by Mr. Paul Rankin's expert testimony that the jail practiced excellent food storage, preparation and serving techniques. The evidence also revealed that the Adams County Jail affords special religious or medically necessary diets to prisoners, upon request.

### Clothing

The Court finds that convicted prisoners accepted into the jail are not furnished clothing except in instances where prisoners are unable to secure needed clothing from family or friends, as authorized by Miss. Code Ann. § 19–25–71 (1979 Supp.). All prisoners are afforded regular access to laundry detergent and especially designed stainless steel laundry sinks located in each dayroom so they can maintain their clothing in a sanitary manner. Due to the jail's exceptional climate control system, there is little, if any, need for special or additional clothing, regardless of the season. Blankets, towels and mattress covers issued to prisoners are all commercially laundered and reissued on a regular basis. Plaintiffs have adduced no significant evidence of any deprivation of constitutional significance with regard to clothing.

### Sanitation

Based on uncontroverted expert testimony, the Court finds that at all times relevant to this lawsuit, the living and service areas of the jail have been maintained in an exceptionally clean and sanitary fashion. The facility has in effect an ongoing pest control program and meets all State Board of Health requirements with regard to food and general sanitation practices. All inmates have twice daily access to stainless steel showers, capable of producing both hot and cold water, and are furnished reasonable articles of personal hygiene including razor, toilet tissue, bathing soap, and laundry detergent. Each individual cell is equipped with a stainless steel toilet, lavatory and water fountain unit, on which is also contained a mirror. The Court specifically finds that no issue of constitutional significance with respect to sanitation has been demonstrated by the plaintiffs.

### Discipline

On March 16, 1979, the defendant, Billy Ferrell, adopted disciplinary rules and procedures which were patterned very closely after those presently used by the Mississippi State Penitentiary at Parchman and which rules have been approved by this Court in *Gates v. Collier*, 454 F.Supp. 579 (N.D.Miss. 1978) and by the Fifth Circuit in *Gates v. Collier*, 606 F.2d 115 (5th Cir. 1979). The Adams County Jail rules meet all of the due process requirements set out in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). These requirements include but are not limited to written notice, a hearing before an unbiased disciplinary authority with the right of appeal and a limited right to present testimony by inmate witnesses and documentary evidence. However, the punishment potential under the Adams County Jail rules is limited only to a temporary loss of privileges. Jail officials have no authority under state law to take statutory earned time and no form of punitive, special cell solitary confinement of the type requiring due process under *Wolff* is practiced by the Adams County Jail officials.

The only form of disciplinary confinement practiced by the jail officials is known as "tight celling." Tight celling may result only after a hearing in accordance with the

disciplinary procedures and involves the prisoner's temporary loss of privileges including his right to leave his regular cell during dayroom periods. Prisoners in tight cell status retain their regular clothing, cell furnishings, personal property, access to counsel, access to hygienic materials, and are fed the regular jail diet, unless it is necessary to remove or regulate these items and/or services to control specific cases of abuse or destruction of county property. Testimony at the hearing revealed that on isolated occasions items such as mattresses and shirts have been removed temporarily from the cells of prisoners for their own protection.

Corporal punishment is not allowed in the jail, nor is there any credible evidence of such practices or abuse of the established disciplinary procedures in the record.

### Medical Care

In the Fall of 1978, the defendants retained Dr. David M. Ball, a licensed physician of Adams County, Mississippi, to provide medical services to inmates. Dr. Ball conducts regular sick call at the jail three times a week from a three room medical care and examining facility designed into the new jail facility. All inmates are notified of the availability to them of sick call and may request medical attention in writing, with such requests relayed from the complaining prisoner directly to civilian jail personnel. The jail maintains medical records on each inmate, including, but not limited to, inmate screening, health progress, medication, physical examination and follow-up records. No medical services are provided by inmates. Various staff members of the jail have also received specialized training in emergency medical care techniques. Dr. Ball is authorized to furnish such medical treatment as appears to be reasonably necessary in his professional opinion for proper medical care of all inmates. Chronic or specialized medical care for inmates is furnished by the Adams County Charity Hospital or other providers on an "as needed" basis. The jail is a five minute drive from three community hospitals.

The Adams County Jail is a participant in a pilot project sponsored by the American Medical Association and the Mississippi State Medical Association to develop a model jail health care system. The jail participation in this program is in conjunction with approximately a dozen other county jails throughout the state. The Director of this program, Mrs. Ella Tardy, testified that the jail staff had made significant and continuing progress toward the project's eventual goal, AMA accreditation. Mrs. Tardy testified that only one jail in Mississippi has presently received AMA accreditation.

### Emergency Procedures

The jail is monitored 24 hours a day through an audio and television surveillance system. All inmate housing areas are equipped with automatic sprinklers, fire safe furnishings, smoke detectors, and automatic fire alarms. The facility also is a fireproof structure designed with two lighted fire escape stairwells and lighted exit signs. All of the emergency equipment is powered by standard power as well as an auxiliary emergency backup source. The only factual evidence to the contrary adduced by the plaintiffs was the fact that the jail might not have a fire evacuation diagram posted in cell block areas. This was contradicted by the sheriff and fire marshal's testimony and, even assuming *arguendo* that it is true, the lack of this minor item would be of no constitutional significance. Thus, in the opinion of this Court, there is no material fact at issue concerning emergency procedures in the jail.

### Exercise

All inmates are afforded access to a dayroom which ranges in size from about 450 square to 700 square feet twice daily. Each room is adequate in size to accommodate such large muscle exercise as an inmate cares to do. While there is no outside exercise area, all inmates have access to sunlight and fresh air, weather permitting, by the special window units installed in each cell and in the dayroom areas.

### Visitation

The procedures in the Adams County Jail governing visitation are posted for all inmates. All inmates are afforded unlimited visitation from the hours of 10:30 o'clock a. m. to 4:30 o'clock p. m. two days a week. There is also a private unmonitored visitation room provided for inmates and their attorneys which is not restricted and is governed only by the attorneys' availability. Clerical and religious visitations are permitted on Sundays and Wednesday evenings of each week.

### Classification

Members of the class in the Adams County Jail are housed solely on the third floor of the facility. These convicted inmates are separated male from female and are additionally segregated when necessary for purposes of medical or security reasons. All other inmates such as convicted misdemeanants and pretrial detainees are housed on the second floor. In all instances, juveniles are housed separately from all other prisoners and are additionally separated by sex. In the opinion of this Court, the Adams County Jail's uncrowded, single cell design compliments this classification system and affords optimal prisoner protection.

### Mail Regulations

Simultaneously with the adoption of jail disciplinary rules, defendant Ferrell adopted and published for availability to all inmates, mail regulations. These mail regulations are the simplified functional equivalent to the mail regulations approved by the Court in *Gates v. Collier,* 390 F.Supp. 482, 492 (N.D.Miss.1975), and provide, *inter alia,* for unlimited correspondence by prisoners, limited opening or inspection of non–privileged mail only under specified conditions related to the security or orderly running of the jail and for unopened and uninspected mail to and from attorneys and governmental officials, except where jail officials have probable cause to suspect that the privileged correspondence is part of a plan to violate jail rules or applicable laws. We find that the plaintiffs have offered no significant evidence demonstrating any constitutional violations of the mail regulations or any constitutionally significant interference with the mail by the defendants.

### Legal Services

The jail allows unlimited contact visitation and private consultation between inmates and their attorneys during normal working hours. The entire contents of the county law library, located across the street from the jail, is available to prisoners on an "as needed" basis. Written law library access rules and checkout slips are available in all cell block areas. Class members may correspond with inmate legal services at the Mississippi State Penitentiary for additional assistance. Testimony by class members indicated that both law books and writing materials were regularly requested and made available in the jail. Sheriff Ferrell also testified that attorneys representing inmates on both civil and criminal matters were regularly summoned to the jail by telephone by prison officials pursuant to inmate requests. Plaintiffs offer no expert testimony on this subject and alleged only a few isolated instances of interference with legal mail to support this contention.

### Miscellaneous

Written rules governing inmate discipline, mail, visiting, legal services, and other areas of jail administration are posted and available to all inmates. The jail also has, at all times relevant to this lawsuit, had a personnel policies and procedures manual available to all employees.

Inmates are regularly allowed to receive packages from friends and family containing reading materials, food, clothing, toilet articles, etc.

The purpose of the July 31—August 1 hearing was to "... evaluate the totality of conditions at the Adams County Jail ..." to determine whether "substantial evidence ... demonstrating a violation of plaintiffs' constitutional rights ..." exists.

Defendants proffered the testimony of five expert witnesses, each of whom related

detailed first–hand knowledge of the totality of jail conditions gained from personal inspections. Except for testimony by Mrs. Ella Tardy concerning the jail's progress toward AMA certification for its health services program, plaintiffs offered no live expert testimony concerning jail conditions at the July 31—August 1 hearing. The three inmates who testified were not qualified as experts in any area and were not shown to possess any particular schooling, skill, or other area of expertise. The only other expert evidence offered by plaintiffs concerning the totality of the jail conditions were several affidavits prepared by persons who were not present at the hearing and, according to all affidavits, had never visited or inspected the Adams County Jail.

## Belton v. Ferrell

### Medical Care

Moses Belton, a convicted prisoner, was received by the jail on November 17, 1978. He was transferred to the Mississippi State Penitentiary on October 26, 1979.

Prior to November 17, 1978, Mr. Belton suffered from mild hypertension and was refused employment with a local business for this reason. Prior to his incarceration, Mr. Belton was not under the regular care of a physician for hypertension or any other medical problem. By his own admission, Mr. Belton still suffered from his hypertension on the date of the jurisdictional hearing in his case.

During his eleven months of incarceration at the Adams County Jail, Mr. Belton was examined by defendants Dr. David Ball or other medical personnel on numerous occasions. Belton initially voiced no complaint concerning his alleged high blood pressure to jail officials. Records show that his first contact with Dr. Ball occurred February 19, 1979, at which time he was treated for body lice. He first complained to Dr. Ball of headaches and other alleged symptoms of his high blood pressure on or about March 26, 1979. On that date, he was transferred to the Natchez Charity Hospital, x–rayed, and given an EKG. The results of that test indicated an intermittent mild case of hypertension, for which Dr. Ball prescribed medication. Belton received medication in accordance with Dr. Ball's prescription, but did not take it because he claimed it made him ill. Belton continued to complain of symptoms allegedly connected with his high blood pressure problem and was examined by Dr. Ball several times. On July 2, 1979, he received medication for "chest pains" but was otherwise found to be in good condition. He was again examined by Dr. Ball numerous times subsequent to July 2, 1979. On October 18, 1979, a second EKG and x–ray was ordered and reviewed by Dr. Ball. Ball found no abnormalities in the x–ray, but noted minor irregularities on the EKG. After one additional examination by Dr. Ball on October 23, jail officials and Dr. Ball concluded that Belton would be better off under observation at Parchman's hospital unit. Accordingly, Belton was sent to Parchman on October 26, 1979.

Dr. Ball testified in his deposition that at no time while Belton was housed in the jail did he (Ball) consider Belton's condition to be "life threatening," "acute," or "serious." Both Ball and Sheriff Ferrell testified that they took prompt action on Belton's many medical complaints and secured all medical attention reasonably necessary in Ball's professional opinion for Belton's chronic blood pressure problems.

To support his medical care claims, Mr. Belton offered his own testimony and an affidavit of a physician who did not testify at the hearing. Mr. Belton was not qualified as an expert, medical or otherwise. Moreover, Dr. Ball testified that the symptoms Belton attributed to his high blood pressure, viz, headaches, dizziness, etc., were not those normally medically associated with hypertension. The affidavit offered by Belton in support of his claim was prepared by a Dr. Malcolm Taylor, based on Belton's EKG records secured from the Natchez Charity Hospital. The substance of Taylor's affidavit is that he disagrees with Dr. Ball's diagnosis and method of treatment of Mr. Belton's condition.

*Disciplinary Action*

On March 16, 1979, Sheriff Ferrell published throughout the jail a rule change prohibiting the passing of notes from one inmate cell block to another. Five months later, on August 23, 1979, Moses Belton attempted to smuggle a letter to another inmate in direct violation of this rule. As such, this action constituted a violation of jail rule 3–79–37 prohibiting the unauthorized use of the mail and violation of mail privileges. Accordingly, Moses Belton was charged in writing with violating rule 3–79–37 by jailer Stutsman. A hearing was held on August 27, 1979. Belton was found guilty and sentenced to serve five days in "tight cell" and to lose two visiting days, both of which are authorized punishments under the jail disciplinary procedures. Belton was furnished a copy of the RVR, for which he receipted by signing his name. There is no record of any attempt by Belton to appeal this charge. This Court has examined the Rules Violation Report and other documentation relating to this disciplinary action and heard the live testimony of Mr. Belton concerning this incident.

Mr. Belton also complains of the opening and apparent inspection of a single item of legal correspondence on one occasion; however, Mr. Belton was unable to demonstrate to the Court that this incident in any way prejudiced his right of access to the courts.

Mr. Belton is presently no longer incarcerated, having been discharged from the custody of the Mississippi State Penitentiary.

### CONCLUSIONS OF LAW

*Green v. Ferrell*

*Jurisdiction*

■ It is axiomatic that federal courts are without power to entertain claims which are otherwise within their jurisdiction if they are so unsubstantial as to be without merit. *Hagans v. Lavine*, 415 U.S. 528, 536–38, 94 S.Ct. 1372, 1378–1379, 39 L.Ed.2d 577 (1974), and cases cited therein. A federal court always has the power to inquire into jurisdiction. *Butler v. Dexter*, 425 U.S. 262, 96 S.Ct. 1527, 47 L.Ed.2d 774 (1976); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Once jurisdiction is challenged, the plaintiff has the burden of proving its existence. *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). This was the burden placed upon plaintiffs by this Court's March 31, 1980 Order directing them to demonstrate substantial evidence of constitutional violations in the jail. We are of the opinion that plaintiffs have failed to meet this burden.

■ Except for certain specific issues discussed *infra*, the limitation on this Court's jurisdiction, which involves only the rights of convicted prisoners, is well settled:

> If the state furnishes its prisoners with *reasonably* adequate food, clothing, shelter, sanitation, medical care, and personal safety, so as to avoid the imposition of cruel and unusual punishment, that ends its obligations under Amendment Eight. The Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration. (Emphasis added). *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir. 1977).

In determining jurisdiction, the court is mindful of the Fifth Circuit's recent teachings in *Smith v. Sullivan*, 611 F.2d 1039, 1044–45 (5th Cir. 1980):

> Where constitutional deprivations are established either in specific instances, e. g., *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (regulations infringing inmates' right of access to the courts), or by the totality of conditions within an institution, e. g., *Gates v. Collier*, 501 F.2d at [1291] 1309 ("[e]ach factor separately ... may not rise to constitutional dimensions; however, the effect of the totality of these circumstances is the infliction of punishment on inmates violative of the Eighth Amendment"), the federal courts may, and must, if the issue is appropriately presented, intervene. E.

g., *Hutto v. Finney,* 437 U.S. 678, 685–88, 98 S.Ct. 2565 [2571–2572], 57 L.Ed.2d 522 (1978); *Procunier v. Martinez,* 416 U.S. [396] at 405–06, 94 S.Ct. 1800 [40 L.Ed.2d 224]. *See also Newman v. Alabama, supra; Pugh v. Locke,* [406 F.Supp. 318 (M.D.Ala.1976)] *supra.* As indicated above, the federal courts have the power, and the duty, to make their intervention effective. To prevent further constitutional deprivations, a court may order forms of relief not normally required by the Constitution but nevertheless necessary given the circumstances if the court's efforts are to be successful. *See,* e. g., *Hutto v. Finney,* 437 U.S. at 685–88, 98 S.Ct. 2565 [2571–2572] (affirming order forbidding more than 30 days of punitive isolation); *Miller v. Carson,* 563 F.2d 741, 751 (5th Cir. 1977) affirming order requiring outdoor exercise). Where, however, no constitutional deprivation is established, the justification for federal judicial intervention evaporates.... Unless acting to remedy federal constitutional violations as part of a "totality" approach, federal judges are not to become enmeshed in the minutiae of prison operations.

Thus, in *Smith,* the Fifth Circuit vacated and remanded an overly intrusive injunctive order against the El Paso County, Texas jail saying:

> The district court is instructed on remand to review its orders in light of *[Bell] v. Wolfish,* [441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)] and the totality of the conditions at the jail as they now exist. *The court should continue to exercise its jurisdiction only if and to the extent that it determines that there are continuing deprivations of federal constitutional dimensions. See Hutto v. Finney,* 437 U.S. at 688, 98 S.Ct. 2565 [at 2572] & n.12; *Taylor v. Sterrett,* 600 F.2d [1135] at 1145–46 [5th Cir. 1979]; 611 F.2d at 1046. (Emphasis added).

Having carefully reviewed all of the evidence before us in accordance with the mandates of *Wolfish* and *Smith, supra,* we have little difficulty in concluding that plaintiffs have utterly failed to demonstrate any continuing deprivations of constitutional magnitude in the operations of the Adams County Jail, either specifically or under the "totality" approach.

### Physical Plant

Although unchallenged by plaintiffs, the Court is most impressed by the fact that this case, like *Bell v. Wolfish, supra,* involves an attack on what can only be characterized as a model jail facility. Opened only a year before the *Green* case was commenced, this multi–million dollar facility has never been overcrowded and represents the state of the art and jail design according to experts from the State Fire Marshall's office and Board of Health. All of the usual physical plant problems and cases of this type, e. g., inadequate space, ventilation, heat, light, etc., are conspicuously absent in the Adams County Jail. The positive effect of this excellent structure, prior to the instigation of any litigation, is persuasive evidence that the defendants have not only indicated but demonstrated a strong willingness to voluntarily police jail conditions in Adams County. In such circumstances, a federal court's intervention is "especially inappropriate." *Smith v. Sullivan, supra,* at 1045 note 11. The Court specifically finds that there is no issue as to the adequacy of shelter afforded by the jail.

### Food

The plaintiffs allege that the jail's diet is unconstitutional because it is nutritionally inadequate, is prepared under unsanitary conditions and is served in two, as opposed to three meals per day. To support their claims, plaintiffs offered (1) testimony by Mrs. Ella Tardy to the effect that the jail did not presently meet all American Medical Association [AMA] recommended standards with regard to food services and diet although the jail was making good progress in this area; (2) an affidavit by a dietition who had never visited the Adams County Jail and was not present at the jurisdictional hearing, to the effect that the jail diet had certain minor deficiencies when com-

pared to nationally recommended standards; (3) testimony by inmate Clarence Pilcher, who claimed to have been hungry at times during his incarceration, but who also admitted to having been disciplined for throwing food on one occasion; and (4) a variety of pleadings and largely conclusory affidavits regarding food complaints by members of the plaintiffs' class who were not present to testify at the hearing. In contrast, the defendants offered live expert testimony by: (1) Paul Rankin, Director of the Division of Food Service and Sanitation of the Mississippi State Board of Health, who testified that the jail met or exceeded all state requirements for institutional food service operations and that its sanitation and food preparation, storage and serving procedures were exemplary; (2) Mrs. Elise Aiden, a licensed dietition, who testified that the regular menu served in the jail was nutritionally adequate, according to nationally recognized standards, when the prisoners' customary low level of physical activity was properly taken into account.

The constitution requires only that prisoners be furnished adequate food. *Newman v. Alabama, supra.* The Court finds the live, expert testimony by Mr. Paul Rankin and Mrs. Elise Aiden to be persuasive that the defendants afford all prisoners at least a reasonably adequate diet.

### Clothing

The constitution requires only that prisoners be afforded reasonably adequate clothing. *Newman v. Alabama, supra.* Pursuant to Miss.Code Ann. § 19–25–71 (1979 Supp.), a jail inmate may wear his own clothing, provided that it passes through the sheriff's hands. This is the procedure followed by the jail, except in rare instances where indigent prisoners are unable to secure clothing from family or friends. The jail supplies laundry detergent and each inmate has daily accessibility to special laundry sinks so as to maintain their clothing in a sanitary fashion. Lastly, the jail's excellent climate control system eliminates the need for special or excessive quantities of clothing. We find no support

for plaintiffs' contention that the constitution requires that defendants issue a special uniform to all prisoners. Although some courts have required this, *Smith v. Sullivan, supra,* makes it clear that an order of this type would only be proper where the Court is acting to remedy established fundamental constitutional deficiencies in jail operations. Plaintiffs have made no such showing in this case. Moreover, the Court specifically finds that there is no credible evidence in the record that the defendants' present manner of supplying reasonably adequate clothing is not constitutionally acceptable.

### Sanitation

Expert testimony by defendants' expert, Paul Rankin, established that the jail afforded an exceptionally clean and well maintained living environment. Prisoners are afforded daily access to showers, laundry facilities and are furnished essential toilet articles, bedding and towels. The only evidence to the contrary offered by plaintiffs is that a few prisoners claim to have found foreign matter in their food and that the jail fails to supply every toilet item that the plaintiffs deem essential, including, for example, "ethnically suitable combs." The Court finds Mr. Rankin's virtually uncontroverted expert testimony to be persuasive as to food service and general sanitation practices. The fact that the jail may not supply such items as "ethnically suitable" combs is not of constitutional significance in view of the totality of jail conditions in this case. The overwhelming, expert evidence before the Court is that the jail provides much more than "reasonably adequate" sanitation, which is all that is required under *Newman v. Alabama, supra.*

### Discipline

The only discipline for infractions of the rules at the jail is temporary loss of privileges. Statutory earned time under state law is not affected by disciplinary actions occurring in county and local jails. There is no form of punitive isolation practiced which is in any way comparable to the type

of punitive isolation condemned by the Supreme Court in *Hutto v. Finney, supra* at 682, 98 S.Ct. at 2569. Nevertheless, Sheriff Ferrell has instituted and carefully follows disciplinary procedures which meet all requirements of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Gates v. Collier*, 454 F.Supp. 579 (N.D. Miss. 1978) *aff'd* 606 F.2d 115 (5th Cir. 1979), even though these procedures are more than what is minimally required under the circumstances of this case. *See Wolff, supra*, at 572, note 19, 94 S.Ct. at 2982, note 19 ("... the procedures required ... for the deprivation of good time [are not] required for the imposition of lesser penalties such as the loss of privileges ..."). There is no substantial or credible evidence before the Court that these procedures are not followed. Plaintiffs have made no showing that any prisoner has been subjected to corporal punishment. Accordingly, the Court finds that plaintiffs have failed to demonstrate that there is any viable issue as to prisoner discipline, either as to the disciplinary procedures themselves, or as they are applied, or with regard to any specific instance of physical abuse of a prisoner for punitive reasons.

### Medical Care

The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." And, such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally interfering with the treatment once prescribed". *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

In examining those cases which address a jail's medical care system as a whole, it is fairly easy to pick out elements of common concern to the courts. However, in general, the courts have looked at the *totality* of the medical care system, rather than isolating on the lack of one of these elements alone, in determining whether constitutional violations are present. Obviously, access to suf-

ficient medical personnel is important, *Newman v. Alabama*, 503 F.2d 1320 (5th Cir. 1974); *Gates v. Collier*, 349 F.Supp. 881 (N.D. Miss. 1972) *aff'd.* 501 F.2d 1291 (5th Cir. 1974). But the size of the institution is relevant in determining what is an "adequate" staff. *Cf. Gates v. Collier*, 349 F.Supp. 881, 901 (N.D. Miss. 1972) (order requiring hiring of sizable permanent full time health care staff at Parchman) and *Miller v. Carson*, 401 F.Supp. 835, 898 (M.D. Fla. 1975). (In 400 man jail, a physician or licensed physicians must merely be on call 24 hours a day; proximity to local hospitals also noted) with *Vest v. Lubbock County*, 444 F.Supp. 824 (N.D. Tex. 1977) (judicial approval of sick call to be held twice a week by physician in small jail). The use of inmates and untrained personnel to perform medical procedures is improper, *Miller v. Carson, supra, Gates v. Collier, supra*. However, a prison policy of sending a medical assistant to visit punitive isolation to determine which inmates would be able to see the doctor has been held constitutional by the Fifth Circuit, *McCray v. Sullivan*, 509 F.2d 1332 (5th Cir. 1975). Serious shortages of medications and the use of anachronistic medical techniques will not be tolerated, *Newman v. Alabama, supra*. Lack of isolation or quarantine areas for those with contagious disease was, together with other conditions, unconstitutional in *Hamilton v. Schiro*, 338 F.Supp. 1016 (E.D. La. 1970). The absence of medical records has also been criticized, *Newman v. Alabama*, 503 F.2d at 1331.

Examining the jail's medical care program under Dr. David Ball, as assisted by Mrs. Ella Tardy of the AMA, we have little problem in concluding that medical care to inmates in Adams County is at least "reasonably adequate" and is improving daily. Dr. Ball's sick calls, amounting to three visits a week, pursuant to a written contract with the defendants, predate this litigation. The jail was designed with a special medical examination room and infirmary. It is close to three local hospitals, which, according to the evidence before the Court, have cooperated with the defendants to afford prisoners both emergency and spe-

cialized medical care. Medication is kept under lock and key and dispensed by jail employees pursuant to written instructions from Dr. Ball, and inmates are prohibited from providing any medical services. A written sick call request system is in effect.

To rebut this showing by defendants, plaintiffs offered a handful of conclusory affidavits of little evidentiary weight and argued that the jail does not meet each and every AMA standard for accreditation under that association's model health services project. While voluntary compliance with the AMA standards is a laudable objective to which defendants seem firmly committed, the fact that the jail may not now meet every AMA standard does not confer jurisdiction upon this Court. National standards, including those of the AMA, are aspirational goals and do not establish constitutional minima. *Bell v. Wolfish, supra.* Instead, the Court's jurisdiction ends where defendants have shown that the health care system under attack is "reasonably adequate." *Newman v. Alabama, supra.* The defendants have made such a showing, thus depriving the Court of jurisdiction in this regard.

### Emergency Procedures

Constitutional violations with respect to fire and safety hazards have generally been found to exist in cases where the institutional structures under attack are antiquated, constructed of flammable materials, poorly maintained and inadequately supervised. *See e. g., Williams v. Edwards,* 547 F.2d 1206, 1211 (5th Cir. 1977); *Battle v. Anderson,* 447 F.Supp. 516 (E.D. Okl.1974) and 457 F.Supp. 719 (E.D. Okl.1978). The court, in the latter opinion, closed a number of units in deteriorated and hazardous condition. *See Gates v. Collier,* 349 F.Supp. 881, 887–888, *aff'd* 501 F.2d 1291, 1309 (5th Cir. 1974).

The only issue of this type raised by plaintiffs is the jail's possible failure to post a fire evacuation diagram in cellblock areas and to prepare a tape of evacuation instructions to be played over the jail's public address system in the event of an emergency. Defendants offered the testimony of Mr. John Chamblee, Deputy State Fire Marshal, in response to these allegations. The heart of Mr. Chamblee's impressive factual testimony is contained in this Court's findings of fact and need not be reiterated here except to note that Mr. Chamblee stated that he had never seen another public building in this state in which fire and safety hazards had been minimized to the degree present in the Adams County Jail. Clearly, there is no question that the jail affords far more than "reasonably adequate" protection from fire and other safety hazards. *Newman v. Alabama, supra.*

### Exercise

Fifth Circuit cases have never held that convicted prisoners who comprise the only class before this Court, have any constitutional right to outdoor exercise. *See e. g., Miller v. Carson,* 563 F.2d at 751. They have daily access to sizable dayrooms where calisthenics and other forms of exercise may be performed. Each cell has a special window which facilitates the entry of sunlight and fresh air. Uncontroverted medical testimony by Dr. Ball indicated that no prisoner examined by him had suffered any identifiable medical problems related to a lack of outdoor exercise. Thus, the Court concludes that the jail affords inmates a reasonable degree of access to indoor space suitable for exercising large muscles and that plaintiffs have wholly failed to make out any case of constitutional proportions with regard to outside exercise.

### Visitation

The members of the plaintiff class, all convicted prisoners, do not have a constitutional right to visitation, except for their legal counsel. *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir. 1975); *Newman v. Alabama,* 559 F.2d at 291.

The uncontroverted evidence before the Court is that all prisoners, including members of the plaintiff class, are afforded a reasonable degree of non–contact visitation and enjoy contact visiting privileges in a private conference area with their attor-

neys of record during normal business hours. Since the members of the plaintiff class have no constitutional standing to demand visitation privileges, it is of no consequence that they may think the visiting policies of the jail are "too restrictive." Plaintiffs are already afforded a greater degree of visiting than that mandated by the constitution. Accordingly, this Court has no jurisdiction to order a modification in the existing visiting procedures at the jail.

### Classification

The constitution does not expressly require a state to develop prisoner classification plans for the incarceration of convicted criminals. In the past, the Fifth Circuit has required correctional institutions to develop classification systems, but those orders were not predicated on an Eighth Amendment right to classification. Instead, they were used as remedies employed to eradicate abuses that were themselves unconstitutional. For example, when prison officials have failed to control or separate prisoners who endanger the physical safety of other prisoners, and the level of violence becomes so high as to constitute cruel and unusual punishment under the Eighth Amendment, federal courts have broad authority to eradicate such conditions and may order the development of a classification system as part of the remedy. *Newman v. Alabama, supra; McCray v. Sullivan, supra* at 1334.

The plaintiffs have utterly failed to demonstrate any factual basis to support a mandatory classification system for the Adams County Jail. Their main area of concern seems to be that convicted prisoners and detainees may, at some time, have been confined on the same floor in the jail. Defendants have shown that except for trustees, who are housed in a dormitory area, all prisoners are individually housed in their own personal cells. Sheriff Ferrell testified that detainees are housed on the third floor of the jail and convicted prisoners on the fourth. Cells are divided by physical barriers into different groups or "tiers", thereby allowing defendants to provide positive se-curity for differing types of prisoners, even if they happen to be housed on the same floor with other types of prisoners. There is no evidence that Adams County officials have failed to control or separate prisoners who endanger the physical safety of other prisoners. Nor is there any evidence that an undue level of violence exists in the jail. Accordingly, the Court concludes that the present classification system of the jail is constitutionally adequate.

### Mail Regulations

The mail regulations in effect at the Adams County Jail are functional equivalent of the mail regulations approved by this Court for use at the Mississippi State Penitentiary in *Gates v. Collier*, 390 F.Supp. 482, 492 (N.D.Miss.1975). They provide among others things, for unlimited correspondence by prisoners, limited inspection and censorship of incoming and outgoing general correspondence, and a right to unopened and uninspected incoming privileged correspondence from attorneys, courts, and public officials, except in cases where jail officials have probable cause grounds to believe that the allegedly privileged correspondence is part of a plan to violate jail rules or the laws of the State of Mississippi.

Plaintiffs do not challenge the legal sufficiency of the procedures themselves and complain of nothing more than one or two instances of alleged interference with privileged mail. This showing is totally insufficient to confer jurisdiction on the Court in this regard.

### Legal Services

The Supreme Court's decision in *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), requires that convicted prisoners be afforded assistance ... in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law ...".

The system in effect at the Adams County Jail is previously described in this Court's Findings of Fact. The three members of

the plaintiff class who testified before the Court at the jurisdictional hearing all indicated that they had been able to secure law books from the county law library and had been afforded opportunities to confer with counsel. Writing materials are available and members of the plaintiff class may seek additional legal assistance from the Office of Legal Services at the Mississippi State Penitentiary. The Court concludes that plaintiffs have failed to demonstrate any jurisdictional basis with regard to legal services.

### Belton v. Ferrell

Having heard live testimony from Mr. Moses Belton, the plaintiff in the second case now before the Court, and read the deposition of Dr. David Ball, his treating physician while incarcerated, the Court is now prepared to make certain conclusions of law with respect to Mr. Belton's individual action.

### Medical Care

In order to confer jurisdiction on the Court, Moses Belton was required to demonstrate nothing less than "deliberate indifference" on the part of defendants to his "serious medical needs," *Estelle v. Gamble, supra.* The history of Mr. Belton's medical problems in the Adams County Jail are contained in this Court's Findings of Fact, *supra.* It is uncontroverted that Mr. Belton suffered from a mild, intermittent, case of hypertension both before, during and after his incarceration in the Adams County Jail. This condition was diagnosed by defendants' Dr. David Ball who referred Belton to the Natchez Charity Hospital for EKG's and other specialized treatment on several occasions. The only evidence to controvert this showing was testimony by Mr. Belton, a layperson and an affidavit by a Dr. Malcolm Taylor, who was not present at the hearing and apparently disagrees with Dr. Ball's diagnosis and treatment of Belton's condition. The overwhelming evidence before the Court is that the defendants afforded Moses Belton genuinely needed medical care on a regular basis. The fact

that Belton, or a physician who has treated him, may claim that Belton did not receive the "best" or "optimum" medical care in the Adams County Jail is not, even if true, sufficient to confer jurisdiction upon this Court. *See McMahon v. Beard,* 583 F.2d 172 (5th Cir. 1978). This is true even if the Court assumes (which it does not) that Dr. Ball was guilty of malpractice. *Bass v. Sullivan,* 550 F.2d 229 (5th Cir. 1977). Accordingly, the Court concludes that there is no substantial evidence of the deprivation of Belton's constitutional right to reasonably adequate medical attention.

### Due Process

The evidence before the Court indicates that Belton was properly disciplined by jail officials for violating an established jail rule prohibiting the smuggling of letters from one cellblock area to another within the jail. It is not the business of the federal courts to retry all prison disciplinary disputes. *Willis v. Ciccone,* 506 F.2d 1011, 1018 (8th Cir. 1974). Accordingly, where jail officials demonstrate a compliance with the teachings of *Wolff v. McDonnell, supra,* and demonstrate a basis in fact for the charges made, "due process" is satisfied. *See Jackson v. McLemore,* 523 F.2d 838 (8th Cir. 1975).

The plaintiffs have not adduced significant evidence of any deprivation of constitutional dimensions of the operations of the Adams County Jail. The complaints and alleged deficiencies brought out by the plaintiffs at the July 30–August 1, 1980 jurisdictional hearing were either not of constitutional significance or overcome by significant, expert testimony by defendants' witnesses. This Court's Order of March 31, 1980, clearly advised both sides to this controversy that the Court entertained serious doubts as to its continuing jurisdiction and was affording the parties an opportunity to address the issue in a full evidentiary hearing. On the basis of the showing made by the plaintiffs, who bore the burden of proof in this proceeding, the Court is unable to conclude that the defendants do not meet minimum Eighth Amendment standards as

884

specified in *Newman v. Alabama, supra.*
Nor does the Court feel that plaintiffs have
demonstrated the existence of any other
deficiency of constitutional dimensions in
the Adams County Jail. Accordingly, as
mandated by *Smith v. Sullivan, supra* and
*Bell v. Wolfish, supra,* this Court is com-
pelled to conclude that it lacks jurisdiction
to further entertain either the class claims
in *Green* or the individual claims raised by
Moses Belton.

Therefore, *Green v. Ferrell,* Civil Action
No. W79–0009(N) and *Belton v. Ferrell,*
Civil Action No. W79–0099(N) are dismissed
for lack of subject matter jurisdiction.